FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 APR 15 PM 3: 34

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| HERMAN MOORE and DORIS CAROL B. MOORE, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| V. | ) ) | CASE NO. CV 98-BU-1637-S |
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | ) ) ) ) | ENTERED APR 15 1999 |
| Defendant. | ) | |

## Memorandum Opinion

This cause comes on to be heard on a motion for summary judgment filed by the defendant American General Life Insurance Company ("AmGen") on March 16, 1999. In its motion, the defendant contends that the plaintiffs, Herman Moore and Doris Carol B. Moore, cannot raise a genuine issue of material fact regarding their claims of fraudulent misrepresentation based upon the sale of life insurance policies containing "vanishing premiums" to them because the claims are time-barred and because the plaintiffs cannot demonstrate that they reasonably relied on the representations of the defendant or its agents. The plaintiffs respond that their claims are not barred by the statute of limitations, nor are they unable to demonstrate reasonable reliance and as such, a genuine issue of material fact exists, permitting the case to proceed to trial.

Summary judgment provides the parties an invaluable opportunity to test the mettle of a case before it ever reaches trial. On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is

weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment has the initial responsibility of informing this court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The movant's burden is not meager; it must illuminate, either through evidence on file or, where no such evidence can be presented, through affirmatively pointing out the reasons why the non-movant cannot or does not raise a genuine issue of material fact sufficient to support a trial.

Once the moving party has satisfied this initial burden, however, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to "go beyond the pleadings" and by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts'" showing there exist genuine issues for trial. *Celotex*, 477 U.S. at 324; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). "Tenuous insinuation" and empty speculation based on loose construal of the evidence will not satisfy the non-movant's burden. *Cf. Mesnick v. General Elec. Co.*, 950 F.2d 816, 820 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992).

While the court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding whether to grant or deny a summary judgment motion, FED. R. CIV. P. 56(c), the Rule "saddles the non-movant with the duty to 'designate' the specific facts in the record" supporting its claims. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Id. See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied*, — U.S. —, 116 S.Ct. 74 (1995).

In resolving whether a given factual dispute requires submission to a jury, the court must inspect the presented evidence through the looking glass of each party's substantive evidentiary burden. *Anderson*, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993). At the same time, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" *Tidwell v. Carter Products*, 135 F.3d 1422, 1425 (11th Cir. 1998) (*citing Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)).

## Facts

In the midwinter months of 1985, the plaintiffs received a phone call from a friend who asked them if they needed any life insurance and directing them to call Joe Miranda ("Miranda"), an insurance agent. After the plaintiffs and Miranda contacted one another, they met at the plaintiffs' home on February 5, 1985. The plaintiffs expressed an interest in purchasing two thirty thousand dollar life insurance premiums, one for Mr. Moore and one for Ms. Moore, and Miranda suggested an insurance policy with what is called a "vanishing premium." With a policy that had a vanishing premium, Miranda explained, the Moores would pay a premium on a life insurance policy for ten years, at which time the interest accrued on premiums that had already been paid would pay the annual premiums on the life insurance policy.[1] The Moores agreed that the purchase of such a policy would be a good idea; they each filled out applications that day for a twenty-five thousand dollar policy. Ms. Moore's policy was issued in March of 1985 and Mr. Moore's policy was issued in

---

[1] In the documents shown to the plaintiffs indicating the projected accumulation value of the policy, it is clearly stated that the figures provided are based upon an interest rate of 11.64 %, which is not guaranteed for the life of the policy.

May of 1985. The premiums on both policies were deducted automatically from the plaintiffs' bank accounts.

Ten years passed and the plaintiffs continued to pay supposedly "vanished" premiums on the life insurance policies through 1995 and into 1996. Allegedly diligent about maintaining their accounts, the plaintiffs received and read bank statements in which the premium amounts were deducted. They also received mail from AmGen indicating changes in the interest rates paid on the life insurance premiums received to date. However, it was not until December of 1996 before Mr. Moore inquired of AmGen why both he and Ms. Moore continued to pay premiums on their life insurance policies. On December 24, 1996, AmGen responded, stating that the cause of the plaintiffs need to continue paying premiums was that the downward change in interest rates had affected the accumulation value of the policy and the amount of interest the policy was able to pay.

Over one year later, on February 18, 1998, the plaintiffs filed the instant lawsuit.

## Contentions & Analysis

A claim of fraudulent misrepresentation is subject to a two-year statute of limitations. Ala.Code 1975, § 6-2-38(1). The limitations period in a fraudulent misrepresentation action does not begin to run, however, until that claim accrues — that is, when the fraudulent misrepresentation either was or should have been discovered in the exercise of reasonable care. *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 420 (Ala. 1997). The reasonable reliance standard places the onus on the purchaser of an insurance policy to read the policy, if that purchaser is knowledgeable enough to do so and recognize discrepancies between the oral representations of an agent and the stated proscriptions in the policy. *Id.* "[T]he "reasonable reliance" standard . . . provide[s] a mechanism . . . . whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Id.* In determining reasonable reliance, the court should look to the circumstances of the transaction, "including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." *Id.*

The plaintiffs in the instant case claim specifically that the perpetrated fraud is that they were deceived into thinking that their premiums would vanish *within ten years*. Therefore, any material presented to the plaintiffs that would have reasonably lead them to believe either that the premiums would not vanish *or* that any vanishing would not occur within ten years should be considered by the court in determining when the plaintiffs should have discovered the alleged misrepresentation for statute of limitations purposes.[2]

In the instant case, the plaintiffs claim that AmGen, through Miranda, fraudulently misrepresented to them that they would no longer be required to pay the premiums on their life insurance policies ten years from the purchase of the policies. The plaintiffs here have a number of investments and have purchased other life insurance polices. They both own mutual funds and other investments. Both have a high school education. Ms. Moore has an associates' degree in business education. There existed language in the documents presented to the plaintiffs in February of 1985 not only that it was possible for their insurance premiums to vanish within ten years after paying into the policy, but that such calculation was based on the prevailing interest rate *which was not* guaranteed. This language, that there was not a guarantee as to the interest rate on which the "vanishing" date of premiums was calculated, should have alerted the plaintiffs in 1985 to the fact that the premiums might not vanish within two years. Any statement that the premiums would definitively vanish at the end of ten years should have been seen as in conflict with the lack of a guarantee as to the interest rates. For this reason, the statute of limitations was exhausted in February of 1987.

Alternatively, even if the statute of limitations did not run in February of 1987, it certainly ran when each plaintiff received bank statements indicating that they were still paying premiums on the life insurance policies in 1995. Both plaintiffs admit that they diligently attend to their bank statements, comparing them to and making appropriate notations in their checkbooks. At the time they received their respective bank statements, both should have recognized that the premiums had

---

[2] The plaintiffs point to the use of the word "vanish" as misleading them. However, the plaintiff's claim is not that the defendant misrepresented that there were vanishing premiums when there were not, but that the premiums would vanish within ten years. Likewise, the defendant does not contest that the premiums of the plaintiffs will eventually vanish, rather that they do not vanish within the ten year period. Whether a misrepresentation occurred, therefore, does not hinge on misleading statements as to whether the premiums vanished, but misleading statements about the premiums vanishing within ten years. However, statements contrary to the proposition that the premiums would vanish within ten years were made by the defendant from the time the policy issued.

not vanished and taken appropriate action. Instead, they both waited until February 18, 1998, to file suit, a date greater than two years after Ms. Moore should have realized that she was still paying premiums — March of 1995 — and Mr. Moore should have realized that he was still paying premiums — May of 1995.

## Conclusion

For the foregoing reasons, the court finding no genuine issues of material fact, the defendant's motion for summary judgment will be GRANTED.

DONE and ORDERED this 15th day of April, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE